712 P.2d 6
**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Stephen J. MANN, Defendant-Appellant.**

**No. 8435.**

Court of Appeals of New Mexico.

Nov. 19, 1985.

Certiorari Denied Jan. 2, 1986.

Paul G. Bardacke, Atty. Gen., Barbara F. Green, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

David A. Freedman, Nancy Hollander, Freedman, Boyd & Daniels, P.A., Albuquerque, for defendant-appellant.

## OPINION

DONNELLY, Chief Judge.

On rehearing, the previous opinion is withdrawn and the following is substituted.

Defendant appeals from a conviction of unlawful possession of a controlled substance, marijuana, with intent to distribute contrary to NMSA 1978, Section 30–31–22 (Repl.Pamp.1980). Four issues are presented on appeal: (1) claim of pretextual stop of defendant's automobile; (2) legality of car search; (3) legality of the defendant's detention; and (4) validity of seizure of evidence. We affirm.

On June 22, 1984, defendant was driving a rental car en route to Tennessee. As defendant approached within a few miles of Roswell, traveling in the eastbound lane, he passed a state police officer, Phillip Baiers, who was observing traffic. The roadway at that point was a four-lane highway with two lanes going both east and west. Defendant was traveling in the inside lane. The maximum speed posted in the area is fifty-five miles per hour. The patrolman followed defendant for approximately two miles. Officer Baiers testified that he did not see any other cars in the roadway when he began following defendant, but that there were other vehicles in the area at the time he stopped defendant. Defendant testified that he believed he was driving approximately forty-five miles per hour. Officer Baiers testified that he determined defendant to be traveling at a speed of approximately thirty-five miles per hour and that defendant was driving in the passing lane of the eastbound lanes.

Officer Baiers signaled defendant to stop and informed him that he would be issued a citation for driving in such a manner so as to impede traffic. The officer requested defendant to produce his vehicle registration papers and driver's license. The car driven by defendant had been rented in Tucson by another person, but defendant's name and driver's license number also appeared on the car rental agreement specifying him as an authorized driver of the vehicle.

Baiers testified that after looking at the registration papers and defendant's driver's license, he requested permission from him to search the trunk of the vehicle. Baiers stated that during the time he was talking with defendant, he observed the following: (1) the rental agreement for the car recited that the car had been rented by another individual; (2) defendant appeared to be nervous; and (3) there were some items placed in the back seat of the car, which Baiers felt were of the type which normally were stored in the trunk of the vehicle.

Defendant initially refused to authorize the officer to conduct a search of the vehicle. Defendant testified that Baiers then informed him that if he did not consent to the search, he would detain him until he could obtain a search warrant. Baiers denied that he made this statement. After defendant refused permission for the search, the officer returned to his patrol car and radioed a request for an NCIC check on defendant and his vehicle.

Defendant testified while the officer was waiting for the NCIC response, he decided to open the trunk to the vehicle and informed Baiers that he would consent to allow the officer to search the car trunk. Baiers testified that when he looked into the trunk he observed the following: (1) the spare tire was sitting on top of some luggage; (2) the lining on the back sides and wall of the car's trunk was loose and had been tampered with; and (3) upon moving some luggage, he saw that one part of the trunk lining had fallen over, partially disclosing a brown package sealed with

tape, positioned behind the trunk lining. The officer started to remove the package. At that point, defendant informed the officer that he was terminating his consent to search and closed the trunk lid. The officer then detained defendant and transported him to jail. Baiers testified that the wrapping of the package observed by him appeared to be of the type normally used to package marijuana. After defendant was booked into jail, Officer Baiers issued him a ticket for impeding traffic by driving too slowly, contrary to NMSA 1978, Section 66–7–305(A).

Following defendant's detention, Baiers secured a search warrant from a magistrate and conducted a further search of the vehicle and the contents of the brown, wrapped package. Upon execution of the search warrant, the hidden package was found to contain eighty-eight pounds of marijuana, wrapped in twelve separate blocks. Defendant was thereafter charged with possession of marijuana with intent to distribute.

## I. CLAIM OF PRETEXTUAL STOP

Defendant contends that the initial stop by Officer Baiers was pretextual and that the officer's claim that he stopped defendant's car for impeding traffic was patently unbelievable. Defendant argues that there were caution signs posted in the highway area and little actual traffic in the vicinity. Defendant also asserts that the trial court erred in denying his motion to suppress and that all evidence obtained from his initial traffic stop, including the evidence seized pursuant to a subsequently obtained search warrant, should have been suppressed.

■ The appellate standard of review of a trial court's denial of a motion to suppress evidence obtained by the police following a warrantless search of a vehicle after a claimed pretextual stop for a traffic violation involves a two-part analysis. First, the appellate court looks to the record to determine if there was a valid basis for the stop, supportive of the trial court's ruling. *See Amador-Gonzalez v.*

*United States,* 391 F.2d 308 (5th Cir.1968); *Taglavore v. United States,* 291 F.2d 262 (9th Cir.1961); *State v. Bloom,* 90 N.M. 192, 561 P.2d 465 (1977); *State v. Luna,* 91 N.M. 560, 577 P.2d 458 (Ct.App.1978); *State v. Galvan,* 90 N.M. 129, 560 P.2d 550 (Ct.App.1977). Second, the appellate court reviews the record to determine whether there is substantial evidence indicating the existence of facts which bring the search and seizure of any evidence within some clearly delineated exception to the fourth amendment requirement for obtaining a search warrant. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Carroll v. United States,* 267 F.2d 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Bloom.*

■ Once a defendant puts in issue facts alleging that law enforcement officers stopped his vehicle on pretext and conducted a warrantless search and seizure, the state has the burden of coming forward with the evidence to show that there was a valid legal basis for the stop and that the search and seizure came within the ambit of a recognized exception to the search warrant requirements imposed by the fourth amendment. *United States v. Humphrey,* 409 F.2d 1055 (10th Cir.1969); *State v. Nittolo,* 317 So.2d 748 (Fla.1975), *cert. denied, Hover v. Florida,* 423 U.S. 1036, 96 S.Ct. 572, 46 L.Ed.2d 411 (1975). *See also State v. Cohen,* 24 SBB 388 (Ct. App.), *cert. granted* (1985); Annot., 10 A.L. R.3d 314 (1966). A police officer may stop the driver of a vehicle if he has a reasonable suspicion that a law has been or is being violated. *State v. Galvan.*

The fourth amendment of the United States Constitution interdicts against subjecting individuals to unreasonable searches and seizures. *Amador-Gonzalez v. United States; State v. Martinez,* 94 N.M. 436, 612 P.2d 228 (1980).

■ In reviewing the propriety of the stop and any subsequent search and seizure of evidence, an appellate court may consider facts elicited not only at the suppression hearing, but also at the trial.

*State v. Dobbs*, 100 N.M. 60, 665 P.2d 1151 (Ct.App.), *cert. denied*, 100 N.M. 53, 665 P.2d 809 (1983). The evidence in the instant case is clearly conflicting as to whether a sufficient basis existed to justify defendant's stop for an infraction of the traffic code.

■ Defendant contends that there was no substantial evidence to support a conclusion that Officer Baiers was justified in making his initial stop of defendant. We disagree. Section 66–7–305(A) provides that no person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or compliance with the law. Here Baiers testified that defendant was traveling thirty-five miles per hour in a fifty-five miles per hour zone while occupying the inside traffic lane. The officer said there were other vehicles in the area when he stopped defendant. While it is true traffic could pass defendant in the outside lane, pursuant to NMSA 1978, Section 66–7–311, slower traffic is directed to normally occupy the outside lane. *See* NMSA 1978, § 66–7–308(B). Given these facts and the standard of review, we are unable to say the trial court's finding is unsupportable.

Where there is conflicting evidence and testimony but there is substantial evidence to support the finding of the trial court, the appellate court will not find error as a matter of law nor reweigh the evidence. *State v. Harge*, 94 N.M. 11, 606 P.2d 1105 (Ct.App.1979); *State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App.1976); *See also State v. Gonzales*, 96 N.M. 556, 632 P.2d 1194 (Ct.App.1981). Conflicts in the evidence are to be resolved by the trier of facts, including any conflicts in the testimony of the witnesses. *State v. Johnson*, 99 N.M. 682, 662 P.2d 1349 (1983).

The trial court's determination that Officer Baiers' initial stop of defendant's vehicle was lawful is supported by substantial evidence.

The trial court determined, in effect, that Officer Baiers' assertion that he stopped defendant for a traffic violation constituted a legitimate basis for the stop. Whether or not defendant could have been convicted for impeding traffic is not the issue. There was substantial evidence from which the trial court could have believed the stop was not pretextual. Any claim that the stop was otherwise invalid is disposed of under our discussion of defendant's other points.

## II. AUTHORITY FOR SEARCH OF VEHICLE; EFFECT OF DETENTION

We discuss jointly defendant's other points raised on appeal.

Defendant claims that the trial court erred in refusing to suppress evidence derived from the initial warrantless search of defendant's vehicle. Defendant contends that there was no valid consent to search and that any consent to search given by him was coerced and the product of an unlawful detention.

■ Where police obtain evidence from an automobile without a search warrant or enter a vehicle for purpose of making a visual inspection and search, the burden of proof is upon the prosecution to establish that the entry and search fall within specifically established and clearly delineated exceptions to the state and federal constitutional requirements for a search warrant. *State v. Gonzales*, 97 N.M. 182, 637 P.2d 1237 (Ct.App.), *cert. denied*, 97 N.M. 242, 638 P.2d 1087 (1981). *See also State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979); *State v. Everitt*, 80 N.M. 41, 450 P.2d 927 (Ct.App.1969).

A search based upon a valid consent is an exception to the requirement for obtaining a search warrant. *State v. Bidegain*, 88 N.M. 466, 541 P.2d 971 (1975). In *Bidegain*, the court observed:

A police officer making a lawful stop of a motorist is not precluded from making reasonable inquiries concerning the purpose or purposes for the stop. An inquiry by an officer is not automatically violative of the right of security of a motorist, because the officer lacks probable cause to secure a warrant, or even

because he lacks reasonable grounds for suspecting the motorist to be guilty of a crime. There is nothing wrong with an officer asking for information or asking for permission to make a search. * * * A search authorized by consent is an exception to the requirements of both a warrant and probable cause and is wholly valid.

*Id.* at 469–470, 541 P.2d at 974–975.

Here the state contends that the initial search which gave rise to facts which Officer Baiers subsequently relied upon to obtain a search warrant was conducted pursuant to the express consent of the defendant and was not predicated upon a search incident to a valid arrest. *Compare State v. Aull,* 78 N.M. 607, 435 P.2d 437 (1967) (search and seizure without a search warrant is valid where consent to search is freely and voluntarily given), *cert. denied, Aull v. New Mexico,* 391 U.S. 927, 88 S.Ct. 1829, 20 L.Ed.2d 668 (1968).

Where a consent to search the closed portion of a vehicle is voluntary and freely given, the search and any subsequent evidence thereby obtained may be properly received in evidence. Similarly, observations gleaned after a valid consent to enter and inspect premises may also provide a basis for establishing probable cause for the issuance of a search warrant where after initially permitting entry, the consent to search is subsequently terminated. Factual determination of whether a consent to search was voluntarily given, or whether it is the product of duress or coercion, turns upon the facts of each case. *United States v. Mendenhall; Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Sneed,* 76 N.M. 349, 414 P.2d 858 (1966); *State v. Aull.* Defendant asserts also that he was effectively in custody at the time when he gave his consent to search, that he was not advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that his consent to the initial search was not given freely or voluntarily. *Miranda* warnings are not a prerequisite to obtaining a valid

consent to search a vehicle, when the state establishes by clear and convincing evidence that the consent for the search was in fact freely given. *Schneckloth v. Bustamonte.*

The voluntariness of a consent to search is a question of fact for determination by the finder of fact. *State v. Bidegain; State v. Sneed. See also United States v. Miles,* 449 F.2d 1272 (10th Cir.1971). The appellate court is to determine whether the evidence viewed in the light most favorable to the trial court's finding substantially supports that finding. *State v. Bloom; State v. Bidegain.*

The trial court in ruling upon defendant's motion to suppress reviewed the reasons given by Officer Baiers for wanting to search defendant's vehicle and found defendant's consent to search was not forced, stating in part:

I'm going to find that [the stopping of defendant's vehicle] was not just a stop for a ticket, which was legitimate, and then he decided, well now that I've got him here I might as well do something else, but he had a legitimate reason to check the trunk [and] that for whatever reason that Mr. Mann decided to open the trunk, he was not forced * * *.

Although defendant initially refused the officer permission to search the trunk, after the officer went over to his unit and was waiting for the NCIC response, defendant opened his trunk and told the officer he could search inside. While defendant argues that the officer used his authority to coerce consent, the trial court found otherwise and the evidence supports this finding. Here, defendant's consent to search was not invalid as a matter of law. *See State v. Sneed.* Thus we hold the evidence sufficient to support a finding that consent was voluntarily given.

Defendant also contends that he was detained for a period of time longer than that which was reasonably necessary for the issuance of a traffic citation. Defendant argues that because his detention was unlawful, then *a fortiori* his consent

was the product of an illegal detention and should be suppressed under the fruit of the poisonous tree doctrine articulated in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ This court has previously considered the question of whether extended detention of a defendant tainted a consent to search, thereby rendering the consent invalid. *State v. Cohen.* Whether a prolonged detention or the attendant circumstances surrounding the detention renders a consent to search the product of coercion is a factual question. *State v. Ruud,* 90 N.M. 647, 567 P.2d 496 (Ct.App.1977); *State v. Bidegain.* Once defendant presents facts indicating a warrantless search, based upon a claimed voluntary consent, the state has the burden of proving the absence of duress, coercion or other factors which would vitiate the voluntary nature of the consent. NMSA 1978, Crim. P.R. 18 (Repl.Pamp.1980); *United States v. Mendenhall; State v. Ruud; State v. Aull.* See also *State v. De Koenigswarter,* 54 Del. 388, 177 A.2d 344 (1962); *James v. State,* 80 So.2d 699 (Fla.1955); Annot., 9 A.L.R.3d 858 (1966).

Whether a particular consent is voluntary is to be determined by the totality of all the circumstances, including the factor of whether defendant has been arrested or subjected to detention. *State v. Ruud; Schneckloth v. Bustamonte; State v. Aull.* See *State v. Austin,* 91 N.M. 793, 581 P.2d 1288 (Ct.App.1978).

■ The fact that a suspect has been subjected to arrest or detention does not automatically invalidate a subsequent consent to search. *State v. Herring,* 77 N.M. 232, 421 P.2d 767 (1966) (consent to search vehicle held valid, where permission was given following arrest), *cert. denied,* 388 U.S. 923, 87 S.Ct. 2126, 18 L.Ed.2d 1372 (1967); *State v. Bidegain,* (consent to search trunk of vehicle upheld after police stopped defendant during routine license and registration check); *State v. Jefferies,* 41 N.C.App. 95, 254 S.E.2d 550 (officer requested permission to look in car and defendant opened trunk of vehicle), *cert.*

*denied,* 297 N.C. 614, 257 S.E.2d 438 (1979); *State v. Gates,* 260 Iowa 772, 150 N.W.2d 617 (1967) (defendant held to have given voluntary consent to search of automobile even though placed under arrest and restrained); *People v. Woods,* 13 Ill.App.3d 860, 301 N.E.2d 593 (1973) (defendant's consent to search vehicle held valid where he agreed to permit police to inspect his vehicle following his arrest). As stated in 9 A.L.R.3d 858, 873 (1966), "a person may validly consent to a search even though the consent is given while he is in custody * * the fact of custody does not inherently render the consent invalid."

In *State v. Herring,* the accused was arrested following a police chase of his vehicle. Defendant drove his vehicle to the police station while accompanied by a police officer. At the station, police requested permission to search the vehicle, and defendant gave his consent. On appeal, defendant challenged the legality of the warrantless search of his automobile and claimed that the trial court erred in admitting into evidence items seized from his car on the basis of his alleged consent to the search. The court upheld the validity of the consent, stating:

It is clear that consent can validate an unlawful search. *Zap v. United States,* 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477. But the waiver of a basic constitutional right will not be presumed. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

Valid consent to search must be voluntary and with no duress or coercion, actual or implied. *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; *Amos v. United States,* 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654. The burden of proving voluntariness is on the state, *McDonald v. United States,* (10th Cir.1962), 307 F.2d 272, and that burden is particularly heavy when the accused is under arrest. * * * Although the fact that consent is given while in custody or under arrest is clearly a factor to consider, we do not believe that such a situation

makes voluntary consent impossible. (Citations omitted.)

*Id.* at 235, 421 P.2d at 769.

In *People v. Klager*, 107 Mich.App. 812, 310 N.W.2d 36 (1981), the Michigan Court of Appeals considered a case factually analogous to the present case. Defendant was stopped for a traffic violation and detained pending the running of a registration check on his vehicle. During this detention, police requested defendant to open the trunk of his vehicle so it could be searched, and he agreed. The court upheld the validity of the consent to search despite failure of police to advise defendant of his right to refuse such request. Similarly in *State v. Beard*, 22 N.C.App. 596, 207 S.E.2d 390 (1974), the court declined to hold that a consent to search was invalid, even though the defendant had been placed under arrest and interrogated at the time the consent to search was given.

The trial court's determination that defendant's consent to search was voluntarily given is supported by substantial evidence.

Defendant's conviction and sentence are affirmed.

IT IS SO ORDERED.

MINZNER and BIVINS, JJ., concur.